All right our second case for this morning is Stephen Cassell against David Snyders. Mr. Breen. Good morning your honors and may it please the court I'd like to reserve five minutes for a rebuttal. Keep your eye on the clock. Yes Mr. Breen. Good morning your honors and may it please the court. I'd like to reserve five minutes for a rebuttal. Keep your eye on the clock. Yes Mr. Breen.  Good morning your honors and may it please the court. Yes Mr. Breen. Good morning your   maybe sorry judge, but the question is why should a federal court decide this question these questions under Illinois RFRA given their novelty and the frankly difficult weighing that's required in the in the face of both legal and scientific uncertainty. Well and so this is part of the problem of both decided that the local officials enjoyed 11th Amendment immunity which you believe there's an incorrect statement of law just just on its own but then went through and made if the 11th Amendment applies a gratuitous ruling on RFRA in Illinois and on a novel ask you you asked the district court to decide the Illinois law questions correct well and yes your 1367 why should federal courts exercise discretionary jurisdiction to balance these difficult and competing factors under an Illinois statute that really hasn't been litigated very much certainly not in these contexts it obviously we are in a unique posture your honor what I would say is the reason to do it is we're certainly bound to bring it we want we're bound to bring our claims and and the claims against the local officials are supplemental they're part of the same you know core of facts so I think we were bound to bring them as part of our complaint whether the district court wish to abstain in some way I don't know that that's a complicated question when it comes to supplemental jurisdiction but you certainly had the right to add them and also then the court had the need to decide as Judge Hamilton is whether it wanted to exercise that supplemental jurisdiction or relinquish it you know obviously what the courts do is they'll dismiss without prejudice and let somebody move on in the state court and your honors I would if you're right about the status of these various people as local defendants and not people who are being conscripted by the governor of Illinois to enforce state law because once you get them over on the line of state defendants then Pennhurst is in your way you know federal courts don't sit to tell state officers to comply with state law and certainly your honor it just the the issues in the way the Seventh Circuit as I understand it has dealt with particularly Illinois law Illinois sheriffs have been held to be agents of the state when they are doing something mandatory like exercising a when they serve it and execute a court order for which there is a specific statutory requirement in Illinois you're under penalty of contempt otherwise when you're looking at these the various prescriptions of the executive orders of the governor it's clear that the local that but I just remembered that I have a very fundamental question for you we really are talking about a couple of things we're talking about the governor's various orders you know that we're actually past number 70 at this point but we're taking a look back into the past at an earlier generation of orders but you're also trying to complain about the notice that the unclear to me and I'd like your comment on it whether any issues about this notice are now moot Elam talks about whether the governor's executive order can be challenged and since the governor's made it very clear he can ratchet up or ratchet down he might reissue an order that looks exactly like the earlier one but the notice strikes me as a different matter and I'm not sure we have a live dispute about that it your honors we are in an odd posture because of Elam you know we had a motion for mootness which the state agreed with back the executive order side but the notices final paragraph says if you do 2020-10 you 2020-10 has evaporated at this point so any future enforcement measures that would or would not be taken against the church would be under a different executive order so I can understand adjudicating whether there can be a 10 person limit or that kind of thing but I don't see how the local by means of the role they played in serving the notice well and your honor the the executive orders have been the one after the other as you pointed out right and and so the at the time of executive order 10 certainly then there was 18 and 32 and others did the church get more and more notices or is this the only notice they ever got well that is the the notice that was received by them and they closed down under but the terms of the executive orders didn't change as well but they did I mean some of the later executive orders as you'll remember had exceptions for free exercise of religion as discussed in the Illinois Republican Party against Pritzker decision and the the the governor inserted those later provisions in response to the filing of this lawsuit well it doesn't matter I'm just saying to you that this notice addressed restrictions on the church that were gone by the time governor Pritzker perhaps agreed with your position and that of many others I mean these this litigation is going on all over the country and as you know there was this later exemption for free exercise of religion that would let the church have 5,000 people in there if it really wanted to right well and one of the problems of this lawsuit is we are litigating as if executive order 32 we're still in place and so if you're not answering my maybe I'm not clear but I'm focusing only on the local defendants the local defendants as I understand this record are in this case only because they served the cease and the notice and if I'm right that the notice is now ineffective superseded disappeared then I don't see why we have any case against the local defendants you would still have whatever you want to say about the governor but I'm just focusing on that the sheriff and the Health Department have not disclaimed an interest in continuing to enforce whatever the governor's executive orders are on the church so if we are at a place where the executive orders were arguing that that it's not moot because the executive order could be reimposed there's been no indication that the sheriff and the Health Department would back off if anything this this you know the governor has order in place right now right but there's certainly an intent shown they've issued one before we you have to presume they'll issue more but we don't know what it would say I mean every time we wake up in the morning we get more news about the pandemic and we hear about a variety of variables that the public officials are are working with and so we don't know what any future cease and desist order would say and obviously we believe this issue was moot because we don't the governor gave us a full exemption and took us out of the phases thing so we don't we don't believe there's going to be any more cease and desist orders at all but if that we just get rid of the local defendants and that and simplify this case down to the case against governor Pritzker if this case is not moot so if this if these executive order if the if the governor issued an executive order shutting down or reimposing executive order 32 it's not moot as to the executive order under Elam unless we and Elam is and Elam was Elam was wrong both misapprehended the facts and that led to a misapplication of the law on that point and also then it did not give the governor the benefit of the Hornbook law that when a government official responds to litigation to to give someone a full exemption you give them the benefit of the doubt which is what the governor did we would give him the benefit of the doubt obviously the Elam panel did not the Elam panel noted that the governor reserved the right to reimpose exactly the same or more stringent provisions if the scientific circumstances would merit so your honor yes I don't know that that is accurate and that with all due deference to the panel that the governor imposed the phases on May 5th on May 28th after at least four lawsuits were filed against him he entirely receded the field for free exercise of took away the mask requirement the sanitizing the social distancing and all capacity restrictions from he's been ratcheting things up because of course as you know I mean it's a little sad to read your brief and say oh only you know whatever it was five people are dead in Stevenson County and now it's 17 and the cases are skyrocketing as they certainly are in nearby Rockford the governor is need to be under much more stringent controls maybe even including free exercise of religion I don't know what he's gonna do but as judge Hamilton said he reserved the right to take whatever steps the science directed him to take and that's what the court noted in Elam and in the court mr. Green can I ask you a different question I'd like you to try to explain your due process claims because it looks like what you're asking us to do is treat as a federal constitutional violation a failure to comply with procedures mandated by state statute and your honor our argument is not that we don't want to federalize the Department of Public Health Act but we do believe there is some requirement needed for notice and hearing pre deprivation before you shut down the line of due process cases federal constitutional due process cases allowing for post deprivation hearings when dealing with emergencies why would that not be sufficient and your honor eight months in we're not in an emergency situation and it was a talking about I'm talking about an order that might take effect on a Thursday that would have an effect on Sunday services with a hearing in court or before an administrative body the following Tuesday and yet here we didn't have that we don't have that opportunity under the governor's orders so at least as applied by the local defendants with the cease and desist order there was no opportunity to go to court the opportunity to go to court would be to defend yourself against a misdemeanor citation and sort of go in this ball well and before we even get to the substance of your procedural due process claim why haven't you forfeited that claim I didn't see that claim in your complaint and you don't mention it in your motion for preliminary adjunction which is what we're here for today it's in the motion at pages 13 and 14 and in the complaint of it we have a count for a due process substantive due process claim I don't see a procedural due process claim in your complaint well and your honor I guess we had understood it be a procedural due process more than substantive but again the record will reflect I don't want a procedural due process point of view that the governor has to provide a pre-deprivation hearing for every citizen and every church and every organization in the state of Illinois before issuing a stay-at-home order but at least in this circumstance where we were this we don't sit to decide only one person's principle if the principle is there has to be a pre-deprivation hearing there are restaurants there are hotels there are airline companies there are individual people there are sole proprietors and I take it your position is they all have to have a pre-deprivation hearing for Saturday Sunday and Monday that's a lot of hearings around the state of Illinois and your honor that is provided though under the Department of Public Health Act of course you're dealing with a case where up to up to 10 or less than 10 people so nine people could get together why is that a shutdown well and your honor in this particular case where you've got a congregation of 10 to 15 families they can't get together why is that if they can assemble in smaller groups we talked about that in Elam as well of course it of course in this particular case you're looking at trying to assign you're placing a value saying that if you you get five or ten that's enough that we respectfully condemn is not the law when you're looking at courts are in a very bad position to micromanage numbers like that I understand where the Chief Justice was on that at the same time in South Bay California had a 100 person or 25% capacity limit on the facts as well here we do have you know we've been pressing the Illinois RFRA which takes you to a compelling interest and least restrictive means analysis and other than the district court decision in this case we know of no other case where another court has held that a 10 person hard cap can can be can stand up to strict scrutiny especially when you're up against factories making you know pork rinds down the street or the tire factory down the street after rain on that on that point this circles back to one of my earlier concerns you how does one apply the least restrictive means test in the face of just fundamental scientific uncertainty about public health it seems to me that and when we're talking about a risk of lethal infections that spread far beyond the particular individuals who might attend the church it seems like you're asking us to use to apply the Illinois RFRA statute in such a way so as to say this congregation is entitled to choose not only to take health risks for themselves but also to impose those risks on their communities how do we balance that under a least restrictive means test your honor we're asking you to compare it to other other factors in the community use the test as it was set out and has been repeated in this particular case you've got the snack King down the street hundreds of people together five days a week eight to twelve hours a day making pork rinds of fried pork rinds you've got the Kelly tire factory where they're stacked up at clock in clock out we're just asking for equal treatment under that point and what those exceptions certainly do is they undermine the compelling interest in holding the 15 family units together with plenty of social distancing masking and all of that it undermines the compelling interest and then makes the least restrictive means the one that has been chosen and has been adhered to by the people of Illinois thousands of congregations for the last five and a half months so that's all we're asking you just apply the test that has been out there for quite some time and I do see my time is running short I don't I all right so Ms. Gupta are you starting yes your honor may it please the court assistant attorney general Priyanka Gupta for defendant governor Pritzker I'll be answering all common questions for the defendants and then my colleague Benjamin Jacoby will present arguments specifically on behalf of local defendants Ventima and Snyder's this court has made clear that a preliminary injunction is an exceptional remedy only to be granted in cases that clearly demand it this case does not plaintiffs conceded in their reply brief that the acute exigencies of this request have been eliminated yet they asked this court to preliminarily enjoin a limit that was imposed to slow the spread of kovat 19 and that has not been in effect since May they are not entitled to this extraordinary relief to begin plaintiffs have not carried their significant burden to show a likelihood of success on the merits my friend from the other side just recognize that he lim applies to their free exercise claim and so under this court's controlling precedent they cannot succeed on the merits of their free exercise claim that brings us to their next federal claim which they claim is a federal due process claim judge St. Eve I would agree with what your question indicated which is that that claim was actually forfeited at paragraph 121 of the plaintiffs complaint they say that they are the executive orders violate and I quote plaintiffs substantive due process rights secured by the 14th amendment so there is no question that their complaint was bringing a substantive due process claim but even if this court were to reach that forfeited argument it is well settled that a failure to adhere to state procedures does not on its own amount to a federal due process violation now we don't think any state procedures were violated here because the church was not closed off and made off limits as contemplated by the Illinois Department of Public Health Act and so these procedural safeguards were not triggered what about the effect of the notice which did seem to say that because it wasn't abiding by the executive order it the church might be closed down at least at the Department of Public Health had the authority to yes your honor I think the key point is that that notice said that such an order might issue and that order specifically said that the process for such an order issuing is set out in the statute the same provision of the statute that plaintiffs point to in saying that they are entitled to procedural safeguards so the notice itself recognized the procedures in place for closing off their church but that next step was not taken here so you're saying that you're so in your view the notice was just in a sense an alert it wasn't an act of closure in and of itself yes your honor it was simply putting plaintiffs on notice or on alert that the church could be closed off and that that order would actually come from the Illinois Department of Public Health and it would be subject to the process set out in the relevant statute so if that were to occur those safeguards would have been triggered here that was not the case although again even if the safeguard should have been applied here which we think they should not this court has made clear that simply a failure to follow state procedures does not amount to a due process violation and plaintiffs here even now an argument have not been able to argue that point out why the due process clause required anything more and so even accepting this forfeited federal due process argument plaintiffs have not even been able to state a claim under the federal due process clause and this court pointed out in the Illinois Republican Party against Pritzker case that they're that plaintiffs must make a strong showing on the likelihood success of the merits and the very least this requires a demonstration of how they're going to prove the key elements of their claim here they are not even be able to make this initial threshold showing as to their federal due process claim and therefore they are not entitled to preliminary injunctive relief based upon that federal claim. Ms. Gupta can you address the merits of the Illinois Religious Freedom Restoration Act claim because I've got to say it's when Illinois adopts a least restrictive means test and then isn't a little more doesn't have a little more flexibility in the order than the one that was why is the limit 10 instead of 11 or 12 or 20 what why isn't there some adjustment for the size of space involved and so on. Yes your honor I'd first note that the deference echoed in Jacobson the chief justice concurrences and the cases on which the chief justice relied make clear that in public health emergencies all rights including the statutory right to the free exercise religion are subject to reasonable restrictions to protect the public health and safety. That may make perfect sense as a matter of First Amendment law and as applied in for example ELIM but we have a state statute that uses considerably broader language and most of us are used to applying strict scrutiny in a variety of contexts and it's pretty tough to satisfy. Yes your honor. Take the tire factory and pork rind factories that your friend on the other side mentioned for example. Yes your honor my friend on the other side has seems to have anecdotal evidence of a pork rind factory. I would note that EO 32 did place restrictions on manufacturing and asked that only essential lines be operated and that shifts be staggered to minimize the risk of transmitting COVID-19. So EO 32 did not allow the type of situation my friend on the other side is describing but setting that to one side even if this court were to apply strict scrutiny under the Illinois RFRA and to delve into this novel state law claim we believe strict scrutiny would be satisfied. At the first step the substantial harm step plaintiffs carry the burden of showing substantial harm and we are not asking this court to judge the sincerity of their beliefs but all they've pled is that in-person services are essential and both the cease and desist notice in EO 32 allowed them to have smaller in-person gatherings. Well it's I don't think that's a very strong foundation for your argument. Why don't you I think you got to move on to the merits because prohibiting a full congregation from meeting is a pretty substantial burden on any church or a religious group however well justified it may be and as a member of the ULIM panel I thought those were justified but but I don't think the substantial burden element is where you ought to focus your attention. Yes your honor even assuming a substantial burden the state has shown a compelling interest in protecting the public health and safety from the spread of this virus which can have serious and even deadly effects. Plaintiffs claim that there is no compelling interest as to them because only six people have died and there have only been 530 some cases but as Judge Wood noted the number of deaths have increased in that county and the number of cases have skyrocketed as well so there is still a compelling interest of preventing the spread of COVID-19 that is in that county. I would also add that in the EO 62 which plaintiffs cited as supplemental authority region 1 where Stevenson County is located has now been subject to a second round of mitigation measures because the situation is so severe and so it's simply inaccurate to say that COVID-19 does not pose a threat in Stevenson County and so the state and the local defendants do maintain a Moving on to the least restrictive alternative as your honor pointed out when discussing this issue with my friend from the other side there is a lot of scientific uncertainty that still surrounds COVID-19 but what we knew when the limit was imposed and what we still know about the virus is that it does spread easily in close quarters where people are gathered for extended periods of time and engaging in activities that lead to respiratory transmission such as speaking and praying and while masks and hand sanitizing are very critical in our fight against COVID-19 and they certainly go a long way and helping us along that fight they're not foolproof there is a reason that this argument is happening over zoom and in person hand sanitizing and wearing masks is simply not as safe as reducing the number of people who gather in one room and your have recommended limiting the size of gatherings and that the 10% limit specifically comes from CDC health guidance so given the scientific information that we did have about this limit and the information that we still have now limiting gatherings such as religious services that increase the risk of COVID-19 transmission is the list least restrictive means of this came up in Elam as well but you may have a congregation of a hundred that meets in a 3,000 square foot room you could have a cathedral with a third of 30,000 square foot nave and it's still a 10 person limit right how does that make sense yes your honor because even though a larger building will of COVID-19 and I don't believe the record is developed on this point at this stage but the science does show that because these particles can linger in the air after people have gathered for more than 30 minutes and have been singing and speaking anyone who moves through those areas can risk getting COVID-19 and here we don't have a cathedral we have a small church that plaintiffs do say they can socially distance in but it is certainly not of the size that your religious right is the ability to converse with each other around the church and it's building after services are completed and and that type of activity also increases the risk of spreading COVID-19 so given that the facts that we have here and that it's inherently more dangerous to have more people in a building the 10-person limit was still the least restrictive limit for preventing the spread of this virus important as we think of this least restrictive means point is it that the members of the church are not internalizing risks to themselves when they meet but in fact there are significant externalities to these risks since somebody who goes to the church and says well I'm willing to assume whatever residual risk there is because my religion means a great deal to me you know I have to assume that's true for everybody who's in the church but then they go home you know and they go to the grocery store or they go to Home Depot or they go someplace and they breathe on someone and now that person gets COVID-19 not a member of the church not somebody who shares shares those views so is the governor relying at all on that sort of second level externality in saying you know as he picks a number he can always play the game well if you can have 10 people why not 11 you know it's 11 why not 12 how do we answer that under least restrictive means lens your honor I think the externalities here absolutely do inform the least restrictive means analysis and that's because this court is looking to what means would accomplish the compelling interest and the compelling interest here is to protect the society as a whole and the society as a whole is going to make the decision to meet they are not just putting their own light exposing themselves to the virus they are as your honor explained exposing others in the community to the virus and so in determining what type of measures are necessary to protect the public at large it matters that this virus can spread so easily from person to person and so that certainly also goes to show why this was the least restrictive means necessary here isn't that also very relevant to the balancing of the hardships for the preliminary injunction yes your honor I'd first know that plaintiffs do not bring up the balancing of the hardships at all and they're opening brief and seem to have forfeited any such argument but also even if plaintiffs were willing to expose themselves to this virus they cannot say that the community as a whole is being willing to be exposed to this virus simply so that they can exercise their religious rights so the balance of the hardships and the public interest still tips in favor of not granting this preliminary injunction I'd also like to know and perhaps my friend on the other side can clarify that and the reply brief plaintiffs at page 2 seem to be asking for a full evidentiary hearing or a trial on the merits and then at page 20 that they asked for this case to be permanent injunction so it's not clear to me in the reply brief that they have shown the exigency needed for a preliminary injunction given that they are asking for this more full-fledged relief and of course those claims are still before the district court and plaintiffs are free to pursue them there I'd like to save anything for mr. Jacoby this might be a good time yes your honor I I will yield my time to mr. Jacoby thank you mr. Jacoby thank you may please the court I represent Stevenson County Sheriff Snyder's in Stevenson County Health Department administrator Ben Tima and I want to focus my comments directly to judge woods inquiry on the mootness of the cease and desist notice the cease and desist notice does reference the would have been a EO 10 at the time which of course has long expired but I'll take it one step further the the Health Department the County Health Department never had the authority and doesn't have the authority to enforce an executive order anyway that the County Health Department's authority is delegated to it from the Illinois Department of Public Health pursuant to the the ID pH's regulations and its authority is limited to that of the ID pH act and ID pH act allows the County Health Department to seek a closure order from a court upon a clear and convincing showing of evidence but that's all it's allowed to do it does so you're saying this notice was just a heads-up then it wasn't a concrete detriment 100% it was not in order for closure from a court it was not in order for immediate closure which would be the only other option and which only lasts 48 hours under the ID pH act it did not close the court it did not close the church and it did not tell the church that the church was closed in fact it only references the church to the ID pH act section 2b which is the power to close in section 2c which is the procedure to close so those are the only things that this notice it was a heads up it was an alert however you want to say it that's all it did and it could not have closed the church under the executive order because the County Health Department doesn't have the authority to enforce the executive order it's only authority is limited to that delegated to it under the Illinois Department of Health Act and so that's a that's an alternative basis for these local defendants to for the score to affirm the denial of the preliminary injunction as to these local defendants and as to Stevenson County defendants in particular and and with that I think my my argument is concluded so unless the thank you very much anything further mr. Breen Thank You under very quickly on the local the cease and desist notice at the bottom last sentence in addition to such an order of closure issued by the Illinois Department of Public Health you may be subject to additional civil and criminal penalties and I think it's well known that you've had citations and there's a criminal penalty attached to the Department of Public Health Act is what I understand and certainly a notice like this would cause a reasonable individual to look at it and believe they are having this enforced against the method it was a preliminary step but obviously it just says maybe it doesn't say you have done anything and if there were a criminal penalty I presume there would be full due process associated with it I would think that warning is enough to let you go into federal court at least in the first instance but the the problems posed here are more from the the frequent changes of the executive order requirements so I would I would tend to agree with you judge Hamilton and I do want to make clear your honor judge Hamilton noted the Elam decision stated very specifically warehouses meatpacking nursing homes and all of that may have a similar spread risk as churches and so even though the Elam panel did not see that was relevant to the free exercise determination it would be relevant under a refer analysis where the defendants bear the burden of proving the compelling and the least restrictive means if with my colleagues indulgence I guess let me just ask you one more time mr. Breen to address this problem of whether we frame it as externalities or putting risks on others how that should come into the calculation in a least restrictive means test being applied under state law that just seems to me like just a very very difficult policy problem it is and the with the other risks in the community so you look at the exceptions undermining the compelling interest in shutting down this particular church or limiting this particular church to ten people and which is why we recited snack King in our complaint in the declaration with our reply we cited the Kelly tire facility obviously Elam has noted the nursing homes and the other risks of meatpacking plants in the community we would say you've got to take those into account the burden is on the defendants though to prove this not us so it's on the defendants and they certainly did not even attempt to to show the difference in risk between those settings and a church with proper social distancing etc okay anything further judge Hamilton no thank you all right well then our thanks to both counsel and the court will take this or all counsel actually there are three of you in the court will take this case under advisement